# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **DEWAYNE CLARK,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No: CIV-25-755-SLP** |
| | ) | FILED |
| | ) | |
| **CORECIVIC, INC., et al.,** | ) | DEC 08 2025 |
| **Defendants.** | ) | JOAN KANE, CLERK |
| | ) | U.S. DIST. COURT, WESTERN DIST. OKLA. BY ______, DEPUTY |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

* * * * * * *

**COMES NOW** the Plaintiff, Dewayne Clark ("Clark"), *pro se*[1], and respectfully offers the following timely Response in Opposition to Defendant CoreCivic, Inc. ("CoreCivic"), Motion to Dismiss (See: *DE 20*) which as set forth herein is more properly treated as a motion for summary judgment.

For the Court's consideration Clark respectfully offers the following:

## I. INTRODUCTION

Here is a smoother, more cohesive version in which the second paragraph naturally grows out of the first. The transition is made explicit so the flow feels continuous and logical:

---

[1] Because Clark is proceeding in this matter without the benefit of counsel, it is respectfully requested that the Court apply a liberal interpretation to the claims asserted herein. See e.g.: *Erickson v. Pardus, 551 U.S. 89, 94 (2007).*

CoreCivic moves to dismiss this action on a procedural technicality, asserting that Clark failed to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA"). See *DE 20.* Respectfully, that argument is both legally and factually unsupported. It rests on a sterile affidavit that ignores the undisputed medical realities of Clark's condition and contradicts CoreCivic's own written policies. The law does not demand the impossible, nor does it permit a defendant to invoke a procedural bar that it—through its own conduct—made unavailable. In short, Clark was not required to exhaust an administrative process that, as a practical matter, he had no meaningful ability to access.

Even if Clark was required to administratively exhaust his claims prior to bringing suit - the facts demonstrating why exhaustion was unavailable also create genuine disputes of material fact that the Court cannot resolve at the motion-to-dismiss stage. These disputes go directly to whether the grievance process could be used at all and are inseparable from the merits of Clark's underlying claims. Such fact-bound questions fall squarely within Clark's Seventh Amendment right to a jury determination. See: *Perttu v. Richards, 605 U.S. ___ (2025).* CoreCivic's motion improperly asks the Court to resolve those factual issues itself.

Even assuming, arguendo, that the administrative process were available, exhaustion would still be unnecessary. Clark's claims sound in tort and seek only monetary relief for a discrete, historical injury—relief the administrative remedy process cannot provide. Because the process offered no avenue for meaningful redress, the PLRA's exhaustion requirement does not apply.

For these reasons, and as set forth more fully below, CoreCivic's motion relies on an unsound procedural defense and must be denied.

## II. BACKGROUND AND PROCEDURAL POSTURE

In the interest of judicial economy and for the limited purpose of responding to CoreCivic's Motion, Clark provides the following relevant background and procedural history.[2]

1. On September 14, 2024, Clark was a federal detainee placed at the Cimarron Correctional Facility ("CCF"), a facility owned and operated by Defendant CoreCivic. See: *DE 19, at 4.*

2. On the morning of September 25, 2024, Clark was placed on a CoreCivic transport bus that, as alleged in the Complaint, was not equipped with seatbelts or any other safety restraints for its shackled passengers. See: *DE 2, at 4.*

3. At approximately 5:12 a.m., the CoreCivic bus was involved in a major accident on Oklahoma Highway 33, causing it to leave the roadway and roll over. See: *DE 19, at 4.* Clark, shackled and unable to brace himself, was violently thrown inside the vehicle. See: *DE 2, at 5.*

4. As a direct result of the accident, Clark sustained a devastating combination of injuries. These included: (1) a shattered right shoulder requiring major reconstructive surgery with the insertion of seven screws; (2) a broken left

---

[2] The facts recited herein are drawn from the Complaint, Clark's sworn declaration filed contemporaneously herewith as Exhibit A, and CoreCivic's own filings. That said, the factual allegations contained in Clark's Verified Complaint (See: DE 2)—detailing the accident, the full extent of his catastrophic injuries, the subsequent medical neglect, his pre-suit compliance with Oklahoma's tort claim notice requirements, and CoreCivic's pattern of concealing evidence—are incorporated herein by reference as if fully set forth.

wrist; and (3) multiple broken ribs, an injury causing severe pain with any physical movement. See: *DE 2, at 5*; See also: *Clark Declaration Exhibit "A"*.

5. Clark was hospitalized from September 25, 2024, until September 28, 2024, for trauma surgery and initial recovery. See: *DE 19, at 4-5.*

6. On September 28, 2024, CoreCivic transported Clark back to CCF. See: *DE 19, at 5.* Upon his return, he was in a state of profound physical helplessness. His right arm was completely immobilized in a surgical shoulder sling, his left arm was encased in a cast, and he was under the influence of prescribed narcotic pain medication, which diminished his capacity to navigate complex procedures. See: *Clark Declaration Exhibit "A"*.

7. From his return on September 28 until October 1, 2024, Clark was confined to the CCF infirmary. See: *DE 19, at 5.* Notably, the affidavit of CoreCivic's Grievance Coordinator is entirely silent regarding the availability of grievance forms or information in the infirmary. See: *DE 19, Ex. 6.* At no point while in the infirmary was Clark provided a detainee handbook, given grievance forms, or informed of any administrative remedy process. Physically and cognitively incapacitated, the process was not available to him. See: *Clark Declaration Exhibit "A"*.

8. On October 1, 2024, Clark was moved from the infirmary to the Charlie North housing unit, where he remained physically debilitated and with both arms functionally useless for the purpose of writing. See: *DE 19, at 5*; See also: *Clark Declaration Exhibit "A"*.

9. As detailed in the Complaint, the surgical bandage on Clark's shoulder was left unchanged for approximately one month—an egregious oversight for which a CCF staff member later apologized. See: *DE 2, at 6*; See also: *Clark Declaration Exhibit "A"*. An administration that ignores a post-operative surgical wound cannot be expected to meaningfully address a procedural grievance.

10. On November 27, 2024, less than nine weeks after his return from the hospital and before he could have completed CCF's multi-step grievance process, Clark was transferred from the facility. See: *DE 19, at 5.*

11. Prior to filing this lawsuit, Clark made repeated attempts, both personally and through legal counsel, to obtain his own medical records from CoreCivic to ascertain the extent of his injuries and care. CoreCivic systematically ignored these requests and refused to produce the records, beginning a pattern of concealment. See: *DE 2, at 7; DE 2, Ex. B, C.*

12. In compliance with the Oklahoma Governmental Tort Claims Act, a formal Tort Claim Notice was sent to CoreCivic detailing the basis of Clark's claims. CoreCivic ignored this notice as well, resulting in a deemed denial under Oklahoma law and reinforcing its pattern of obstruction. See: *DE 2, at 2; DE 2, Ex. A.*

13. On July 9, 2025, having been ignored at every turn, Clark filed his *pro se* Complaint. See: *DE 2.*

14. On August 1, 2025, this Court ordered CoreCivic to file a Special Report and explicitly notified the parties that if a dispositive motion relied on matters

outside the pleadings, it would be converted into a motion for summary judgment. See: *DE 12, at 3.*

15. On October 28, 2025, in response to this Court's Order, CoreCivic filed the official Oklahoma Highway Patrol Collision Report. The copy filed with this Court was conspicuously redacted, obscuring portions of the official state record concerning the accident—the ultimate proof of CoreCivic's ongoing efforts to thwart and conceal. See: *DE 19, Ex. 2.*

16. On October 28, 2025, CoreCivic filed its Motion to Dismiss (See: *DE 20*), predicated entirely on the affidavit of its Grievance Coordinator. See: *DE 19, Ex. 6.*

*17.*

## III. LEGAL ARGUMENT

### A. Because the Defendant Relies on Evidence Outside the Pleadings, Its Motion Must Be Treated as One for Summary Judgment

Although CoreCivic has styled its filing as a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), its motion cannot be evaluated under that standard. A Rule 12(b)(6) motion is limited to assessing the sufficiency of the allegations contained within the four corners of the complaint. See: *Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994).* In doing this, a reviewing court may consider only the complaint, documents incorporated into the complaint by reference, and matters subject to judicial notice. See: *Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010).* Where, as here, the defendant invokes an affirmative defense—such as failure to exhaust administrative remedies under the PLRA—and relies on materials outside the pleadings to substantiate that defense, the Federal Rules of Civil Procedure are unambiguous: the

motion must be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). The Tenth Circuit has repeatedly emphasized that conversion under Rule 12(d) is mandatory when extra-pleading evidence is submitted and not excluded. See: *Burnham v. Humphrey Hospitality Reit Trust, Inc., 403 F.3d 709, 713–14 (10th Cir. 2005) ("When matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment.");* See also: *Alexander v. Oklahoma, 382 F.3d 1206, 1214 (10th Cir. 2004) (conversion required where the district court considered extra-record evidence);* See: also: *David v. City & Cnty. of Denver, 101 F.3d 1344, 1352 (10th Cir. 1996) (Rule 12(b)(6) is not a mechanism for resolving factual disputes or weighing evidence).*

This principle is especially important where a defendant seeks dismissal based on an affirmative defense. This Circuit has long held that dismissal under Rule 12(b)(6) on the basis of an affirmative defense is only appropriate when the defense is apparent from the face of the complaint alone. See: *Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir. 1965)*; See also: *Fernandez v. Clean House, LLC, 883 F.3d 1296, 1299 (10th Cir. 2018).* Failure to exhaust administrative remedies under the PLRA is not such a defense; it requires a fact-intensive inquiry and therefore cannot be resolved solely on the pleadings. Accordingly, because CoreCivic's Motion relies on evidence beyond the complaint and seeks resolution of factual issues associated with an affirmative defense, Rule 12(d) mandates conversion. The motion must therefore be analyzed under the summary judgment framework.

**B. Standard of Review: Summary Judgment Is a Drastic Remedy and Requires the Absence of Any Genuine Dispute of Material Fact**

Once converted under Rule 12(d), the motion must be governed by the strict standards of Rule 56. To that end, Summary judgment is a "drastic remedy" that must be granted "with caution." See: *Garrison v. Gambro, Inc., 428 F.3d 933, 935 (10th Cir. 2005).* The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. See: *Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).* A fact is "material" if it might affect the outcome under governing substantive law. See: *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).* A dispute is "genuine" if a reasonable jury could return a verdict for the non-moving party. See: *Id.* Importantly, the court may not "weigh the evidence" or "determine the truth of the matter" at this stage; its sole function is to determine whether a triable issue exists. *Id. at 249.*

The long-recognized standard in this circuit is that summary judgment is inappropriate where competing evidence or credibility determinations are at issue. See: *Estate of Booker v. Gomez, 745 F.3d 405, 411 (10th Cir. 2014) (reversing summary judgment where evidence was not viewed in the light most favorable to the nonmovant);* See also: *Henderson v. Inter-Chem Coal Co., 41 F.3d 567, 569 (10th Cir. 1994) (summary judgment improper where "the evidence yields conflicting inferences").* In evaluating a motion for summary judgment the Supreme Court has held that "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." See: *Tolan v. Cotton, 572 U.S. 650, 651 (2014) (per curiam).* Moreover, to survive a plaintiff need only present specific facts—

through declarations, documents, or other evidence—showing a genuine issue for trial. See: *Anderson, 477 U.S. at 256.* The court's role is not to resolve the dispute but to determine whether one exists.

It is against the above legal framework that CoreCivic's improperly styled motion to dismiss must be decided.

**C. The PLRA's Exhaustion Requirement is Excused Because No Administrative Remedy Was "Available" to Clark.**

The PLRA requires an inmate to exhaust only such administrative remedies "as are available." See: *42 U.S.C. § 1997e(a).*[3] For this purpose a remedy is unavailable when: (1) it operates as a "simple dead end"; (2) it is so "opaque" as to be, "practically speaking, incapable of use"; or (3) when prison administrators "thwart inmates from taking advantage of a grievance process." See: *Ross v. Blake, 578 U.S. 632, 643-44 (2016)* Because failure to exhaust is an affirmative defense, CoreCivic bears the burden of proving not only that Clark failed to file a grievance, but that a legally "available" remedy actually existed for him in his specific condition. See: *Jones v. Bock, 549 U.S. 199, 216 (2007).* CoreCivic's evidence falls far short of this burden. The sworn testimony of Clark, which must be taken as true at this stage, establishes that the grievance process at CCF was unavailable to him. For example:

[3] It is not lost on Clark that CoreCivic—a private, profit-driven corporation that routinely insists it is not a state actor for purposes of liability—simultaneously seeks the full protection of a statute enacted to regulate state and federal correctional institutions. The irony is difficult to ignore: CoreCivic disclaims the obligations of a public jailer while invoking the PLRA as though it were one. Courts have rightly observed the tension inherent in such arguments. See, e.g., *Richardson v. McKnight, 521 U.S. 399, 412 (1997) (noting the "functional differences" between private prison contractors and traditional state actors).*

### 1. The Grievance Process Was "Incapable of Use" Due to Clark's Severe Medical Incapacitation.

A remedy is unavailable if it is so opaque or confusing that it is "incapable of use." See: *Ross, 578 U.S. at 643.* This principle logically extends to circumstances where an inmate is so physically or medically debilitated that he is unable to navigate the process. See, e.g., *Tuckel v. Grover, 660 F.3d 1249 (10th Cir. 2011) (recognizing unavailability where an inmate is "so sick... or otherwise incapacitated that he is unable to utilize the process").* The facts here, viewed in Clark's favor, paint a grim picture of profound incapacitation. He was returned to CCF with his right arm completely immobilized, his left arm encased in a cast, and his body wracked with pain from multiple broken ribs, all while under the influence of pain medication. See: *Clark Declaration Exhibit "A".* The law does not require an inmate to be a "superman." See: *Braham v. Cty. of Washington, No. 2:19-CV-01128, 2020 WL 1166395, at *6 (W.D. Pa. Mar. 11, 2020).* For a man with two disabled arms recovering from catastrophic trauma in the infirmary, CoreCivic's paper-based process was, "practically speaking, incapable of use." See: *Ross, 578 U.S. at 643.*

### 2. CoreCivic's Affidavit Fails to Address Clark's Reality.

CoreCivic's entire exhaustion defense rests on the self-serving, bureaucratic affidavit of its Grievance Coordinator, Kayla Williams ("Williams"). See: *DE 19, Ex. 6.* A point-by-point comparison between CoreCivic's claims and the factual record reveals the affidavit to be both inconsistent with CoreCivic policy and a factually incorrect.

**CoreCivic's Claim:** Williams attests that the grievance process "is summarized in the Detainee Handbook that is given to every detainee upon their arrival at the facility." See: *Williams Affidavit ¶ 4.*
**The Reality:** Clark was not "arriving"; he was returned from a trauma hospital as a post-operative patient and taken directly to the infirmary. See: *DE 19, at 5.* He was never re-oriented or provided a new handbook in his state of severe medical distress. See: *Clark Declaration Exhibit "A".*

**CoreCivic's Claim:** Williams attests that grievance forms were available on the "Charlie North housing unit." *Williams Affidavit ¶ 11-12.*
**The Reality:** This conveniently ignores Clark's confinement to the infirmary from September 28 to October 1, a unit for which Williams provides no evidence of form availability. See: *DE 19, at 5.* CoreCivic has presented zero evidence that the process was available in the one place Clark was housed when he was at his most vulnerable—a fatal gap in its proof. See: *Jones, 549 U.S. at 216.*

**CoreCivic's Claim:** Williams vaguely refers to a process "summarized in the Detainee Handbook," implying a clear, knowable procedure was in place. See: *Williams Affidavit ¶ 4.*
**The Reality:** CoreCivic has conspicuously failed to produce this handbook. This is a dispositive evidentiary failure. Without it, no one—not Clark and not this Court—can know the most critical procedural requirement: the deadline for initiating a grievance. For all the Court knows from the present record, the deadline to grieve the catastrophic accident of September 25 expired while Clark was lying in a hospital bed. A process with secret deadlines is the definition of a system so "opaque" as to be "incapable of use." See: *Ross, 578 U.S. at 643-44.* CoreCivic cannot prove a remedy was "available" by referencing a document it is actively concealing.

**CoreCivic's Claim:** Williams states that "a written description of the grievance process is kept in the Charlie north detainee housing unit. Additionally, Williams states that she "regularly advises staff not to accept filed out administrative remedies (sic"). See: *Williams Affidavit.*
**The Reality:** Williams never explained where the grievances process is located within the Charlie North Housing unit. For all we know, if it is in the unit it is stuffed in a desk under a box of paperclips and a ruler. Even more egregiously is that despite her advisement to staff, the very policy she relies upon says that detainees have the option of giving completed grievances to staff. See: CoreCivic Policy 14-105(E)(1)(b).

> Williams glaring admission of her actions with staff are evidence of a culture of poor training and deceit at CoreCivic.

In sum, CoreCivic's evidence collapses under the weight of the actual facts of the case. It cannot meet its burden of proving availability by submitting a self-serving and contradictory affidavit that describes a theoretical process for able-bodied inmates and simultaneously concealing the very document that defines the process's rules. The stark contrast between the Williams affidavit and Clark's sworn declaration creates profound genuine disputes of material fact on the threshold issue of availability. At this stage, where Clark's evidence must be believed, it is clear that the grievance process was a practical nullity for him. Accordingly, CoreCivic's motion must be denied on this basis alone.

### D. The Grievance Process Was a Futile "Dead End" Thwarted by CoreCivic's Pattern of Obstruction.

This Circuit has explicitly recognized that prison officials can render remedies unavailable by creating a "climate of intimidation and futility." See: *May v. Segovia, 929 F.3d 1223, 1235 (10th Cir. 2019).* The record here is replete with evidence of CoreCivic's creation of precisely such a climate, demonstrating that any attempt by Clark to file a grievance would have been useless. First, CoreCivic's shocking medical neglect proves that its administrative process would have been a "dead end." As established in the Complaint and Clark's declaration, the bandage on his surgical wound was left unchanged for approximately *one month. See: *DE 2, at 6*; See also: *Clark Declaration Exhibit "A"*. This was not a minor oversight; it was a flagrant disregard for basic, post-operative care that put him at risk of serious infection. The

egregious nature of this failure is underscored by the fact that a CCF staff member eventually apologized for the neglect. See: *Clark Declaration Exhibit "A".* An administration that ignores a man's festering surgical wound cannot be expected to meaningfully address his procedural complaints. The PLRA does not require an inmate to engage in a pantomime of process with an entity that has already proven itself unwilling or unable to provide any meaningful relief. Any grievance filed would have been a letter to a black hole—a classic "dead end." See: **Ross, 578 U.S. at 643.*

Second, CoreCivic has engaged in a clear and undeniable pattern of obstruction and concealment that began long before this litigation and continues to this day. This pattern renders any internal process futile. It started when Clark made formal requests, both personally and through legal counsel, for his own medical records that were systematically ignored by CoreCivic. See: *DE 2, at 7, Ex. B, C;* and continued through CoreCivic ignoring Clark's timely Tort Claim Notice. See: *DE 2, at 2, Ex. A.* Now, they even filed with the court a heavily redacted version of the Oklahoma Highway Patrol Collision Report with this very Court. See: *DE 19, Ex. 2.* This was done for the sole purpose of preventing the Court and Clark from having all of the information available to them regarding the collision. CoreCivic's obstruction and concealment actions are the most powerful proof imaginable of their *modus operandi.* If CoreCivic is willing to actively obstruct justice in open court, it would surely have thwarted any attempt Clark made to seek redress through its opaque and unmonitored internal grievance system. These actions are not isolated errors; they

are proof positive of the "climate of futility" that made any administrative remedy at CCF unavailable to Clark. See: *May, 929 F.3d at 1235.*

**E. Clark's Transfer from the Facility Independently Rendered Exhaustion Impossible.***

Even if, for the sake of argument, the grievance process had been theoretically available and not futile, Clark's transfer from CCF provides a separate and independent basis for finding that exhaustion was excused. A remedy that cannot be completed is not "available" under the PLRA.

Clark was transferred from CCF to a Bureau of Prisons facility on November 27, 2024. See: *DE 19, at 5*. This was less than nine weeks after he was returned from the hospital. As established by CoreCivic's own filings, which reference its formal policy (See: *CoreCivic Policy 14-105*), the CCF grievance process is a formal, multi-step system involving an initial filing on a specific form, a response from staff within a set timeframe, and at least one level of appeal. See: *DE 19, Ex. 5*. This structure is the norm for all institutional grievance systems, which require tiers of review to be considered adequate under the PLRA. The timeline makes completion of such a process impossible. Even assuming, contrary to the facts, that Clark had become physically and mentally capable of initiating a grievance in mid-to-late October, the multi-step process of filing, receiving a response, and then filing an appeal could not possibly have run its course before his transfer in late November. The Tenth Circuit has held that when a prisoner "is transferred before he can complete the grievance process, the remedies are rendered unavailable." See: *Muhammad v. Gentry, 371 F. App'x 906, 908 (10th Cir. 2010) (unpublished).* Because CoreCivic's custody over

Clark ended before he could have navigated its multi-layered administrative process to completion, his ability to exhaust was cut off, rendering the remedy unavailable as a matter of law.

Additionally, CoreCivic's administrative remedy procedure provides that detainees can continue their administrative remedies after transfer. However, this stated process is all but impossible for inmates like Clark. As despite CoreCivic's representations it would have been impossible for Clark to provide them a new mailing address upon his release. This is so because he did not know what the new address would be. Rather, Clark was placed in-transit status where he remained for over one month before arriving at a new facility. During this month in transit Clark would have missed all established deadlines for seeking administrative review.

### F. In the Alternative, Exhaustion of the Internal Grievance Process is Not Required For These State-Law Tort Claims.

Even if this Court were to look past the practical unavailability of any internal grievance process in this case, dismissal would still be improper. CoreCivic's motion rests on a fundamentally flawed premise: that the PLRA's internal grievance requirement, is the exclusive gateway to court for any claim brought by an incarcerated person, including state-law tort claims for which the state has created its own, separate pre-suit notice scheme. That is incorrect.

Clark's negligence, negligence *per se*, and gross-negligence claims are state-law tort claims governed by Oklahoma law. These state law claims are governed by Oklahoma's comprehensive statutory framework that operates as the mandatory prerequisite to filing such claims against a governmental entity or its private

contractors: the Oklahoma Governmental Tort Claims Act ("OGTCA"). See: *51 O.S. § 151 et seq*. Under the OGTCA a claimant must provide written notice of a tort claim within one year of the loss, including the date, time, place, and circumstances of the incident, and the amount of compensation sought. *See 51 O.S. § 156(B), (E).* Once proper notice is given, the governmental entity has ninety days to approve or deny the claim; if it fails to act, the claim is "deemed denied" by operation of law, and the claimant is then statutorily authorized to file suit. See: *51 O.S. § 157(A).* This notice-and-denial framework serves precisely the same core function as the PLRA's exhaustion requirement: it provides advance notice and an opportunity to investigate and resolve claims before litigation.

The above being said, Clark did exactly what Oklahoma law required him to do. Before filing this action, he served a formal OGTCA Tort Claim Notice containing all statutorily required information. The notice was received, no response was issued within the ninety-day period, and the claim was therefore deemed denied by operation of law, thereby perfecting his right to sue under the OGTCA. See: *51 O.S. § 157(A).* CoreCivic's motion simply ignores this state-mandated exhaustion scheme and pretends it does not exist, attempting instead to substitute the PLRA's internal grievance process as a second independent barrier to court. To hold that an OGTCA claimant who has fully complied with the exclusive state-law prerequisite must also exhaust a separate PLRA grievance procedure for the same tort claims would create an irrational, duplicative "double exhaustion" regime that neither the Oklahoma Legislature nor Congress can plausibly be understood to have intended.

There is a second, more fundamental problem. Even apart from Clark's compliance with the OGTCA, the PLRA's exhaustion requirement is ill-fitted and inapplicable where, as here, the plaintiff asserts state-law tort claims seeking only compensatory damages for a discrete, historical injury that no prison administrator can undo. The central purpose of PLRA exhaustion is to give correctional officials "an opportunity to correct [their] own mistakes with respect to the programs [they] administer before [they are] haled into federal court." See: *Woodford v. Ngo, 548 U.S. 81, 89 (2006).* That rationale makes sense for ongoing "prison conditions" claims—where an administrative grievance can prompt changes in policy, discipline staff, or remedy continuing violations. It makes far less sense in the context of a past tort where the injury has already occurred and the only meaningful relief available is money damages. Internal grievance systems like the one at issue here generally have no authority to award compensatory damages in any amount. They cannot restore what has been lost; they cannot compensate for permanent physical harm; and they cannot provide the monetary relief Oklahoma tort law exists to secure. For such claims, the grievance process is, in practical terms, a remedial nullity.

To be sure, the Supreme Court held in Booth that exhaustion may be required even where money damages are unavailable under the grievance process in a § 1983 "prison conditions" case. See: *Booth v. Churner, 532 U.S. 731, 736–38 (2001).* But Booth involved an internal process that could still provide meaningful non-monetary relief—such as changes in policy or discipline of officers—remedies directly tied to the ongoing prison-conditions dispute at issue there. The Court did not squarely address

the distinct scenario presented here: state-law tort claims seeking only compensatory damages for a past, discrete injury, where the administrative process is powerless to offer any remedy that even approximates what the governing tort scheme is designed to provide. Requiring an inmate-plaintiff in that posture to file an internal grievance that is incapable of granting any relevant relief serves no legitimate purpose. It does not give the facility a meaningful opportunity to "correct its mistakes," because the mistakes are historical and irreversible. It does not promote judicial economy; it merely interposes a purposeless procedural hurdle between an injured plaintiff and the state-law compensation system that the OGTCA already carefully regulates. For these reasons, and independently of the factual unavailability issues addressed above, the PLRA's internal grievance requirement does not operate as a bar to Clark's properly noticed and perfected state-law tort claims.

**G. Because the Factual Disputes Regarding Availability Are Inextricably Intertwined with the Merits, a Jury Must Decide Them.**

Even if the Court were to conclude that the present record does not conclusively establish the unavailability of administrative remedies as a matter of law, CoreCivic's motion must still be denied for a more fundamental reason: the Seventh Amendment prohibits a judge from resolving the factual disputes CoreCivic asks this Court to decide.

In *Perttu v. Richards*, the Supreme Court held that when the factual issues relevant to a PLRA exhaustion defense are "intertwined with the merits" of the plaintiff's underlying claims, the Constitution entitles the plaintiff to have a jury resolve those disputes. See: *Perttu v. Richards, 605 U.S. ___ (2025).* The Court made

clear that while judges may resolve purely procedural or jurisdictional facts, they cannot weigh evidence, choose between competing versions of events, or make credibility determinations where the exhaustion question and the merits depend upon the same body of facts. To do so would "impermissibly invade the province of the jury" and violate the plaintiff's Seventh Amendment right to trial by jury. *Id.* This case presents precisely the circumstance *Perttu* addresses. The factual questions that determine whether the grievance process was "available" under the PLRA—whether the plaintiff was physically capable of filing a grievance, cognitively capable of understanding the process, or reasonably able to access forms or assistance—are the very same facts that will determine liability and damages at trial. The exhaustion inquiry does not sit apart from the merits; it is built from the same factual core. For example, determining whether the internal grievance process was "capable of use" requires a factfinder to evaluate:

> The severity of the accident and the force of the impact that caused the plaintiff's musculoskeletal injuries;
>
> The nature and extent of those injuries, including surgical reconstruction, immobilization, impairment, and the physical limitations stemming from broken ribs and shoulder trauma;
>
> The level of pain, immobilization, and physical dependency resulting from the injuries;
>
> The cognitive, physical, and functional effects of narcotic pain medications and post-operative recovery; and
>
> Whether an individual in that condition could realistically complete, sign, or submit any written grievance.

These are not peripheral or collateral facts; they are the same facts the jury must evaluate to determine negligence, causation, and damages. Whether the plaintiff was too incapacitated to file a grievance is inseparable from whether he suffered profound injuries caused by CoreCivic's conduct. CoreCivic's motion attempts to collapse this factual inquiry into a single credibility contest between the plaintiff's sworn declaration and the affidavit of CoreCivic's own employee—an affidavit that omits critical information and contradicts other record evidence. But weighing the competing accounts, choosing whom to believe, and resolving inconsistencies are quintessential jury functions. The Court cannot, consistent with the Seventh Amendment and *Perttu*, decide these questions as a matter of law.

Because the exhaustion defense and the merits "substantially overlap and depend upon the same factual determination," *Perttu* requires that a jury—not the Court—resolve the disputes. The constitutional prohibition is absolute. Accordingly, CoreCivic's motion must be denied.[4]

## IV. CONCLUSION

[4] Even if the Court were to determine that the factual disputes surrounding "availability" are not sufficiently intertwined with the merits to trigger the Seventh Amendment rule articulated in *Perttu*, CoreCivic's motion must still be denied as premature under Fed. R. Civ. P. 56(d). Summary judgment is inappropriate when the nonmovant "cannot present facts essential to justify its opposition" without discovery. See: *Fed. R. Civ. P. 56(d).* Courts routinely deny early summary-judgment motions where, as here, the movant exclusively controls the key evidence. See, e.g., *Price v. United States, 81 F.3d 1429, 1432 (7th Cir. 1996).* CoreCivic's exhaustion argument relies almost entirely on selective, self-serving evidence while withholding or omitting documents directly relevant to whether the process was actually "available," including infirmary procedures, grievance-distribution policies, detainee-handbook materials, and records concerning its handling of the underlying incident. Without discovery into these matters—none of which are accessible to the plaintiff—he cannot fully present the facts essential to rebut the exhaustion defense. Rule 56(d) therefore provides an independent and mandatory basis to deny or defer the motion.

CoreCivic's motion does not fail at the margins—it collapses at every point where the law places a burden upon the defendant. What CoreCivic seeks is not the application of a statute but an escape hatch: an invitation for the Court to ignore reality, disregard the only exhaustion process that actually applies, and assume the role of factfinder on disputes the Constitution reserves for a jury. The Court is under no obligation to indulge that strategy.

CoreCivic offers a grievance process that was never meaningfully accessible, an exhaustion theory that does not fit these tort claims, and a narrative built on selective, self-serving omissions. It is an attempt to convert procedural technicalities into a shield against accountability—a maneuver the PLRA does not support and basic fairness does not tolerate. The law does not require impossibilities. The Constitution does not permit judicial fact-finding on contested merits issues. And nothing in the record comes close to carrying CoreCivic's burden. Thus, the Motion must be denied.

**WHEREFORE,** Clark respectfully requests that this Honorable Court deny CoreCivic, Inc.'s Motion to Dismiss (See: *DE 20*), and award any further relief the Court deems just and proper.

*Respectfully Submitted,*

**Dewayne Clark**
Reg No.: 32563-044
USP McCreary - Satellite Camp
P.O. Box 3000
Pine Knot, KY 42635

**CERTIFICATE OF SERVICE**

I hereby certify that on this _20___ day of November 2025, I served a true and correct copy of the foregoing Response by U.S. Mail, postage prepaid, upon the following counsel of record:

Darrell L. Moore, Esq.
Court Place at North Vann
P.O. Box 368
Pryor, OK 74362
Attorney for Defendant CoreCivic

**ORIGINAL TO:**
United States District Court Clerk
Eastern District of Oklahoma
101 North 5th Street, Room 208
Muskogee, OK 74401

**WITNESS MY HAND THIS _20_ DAY OF NOVEMBER 2025**

______________________
Witness

Dewayne Clark