IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

FILED
JAN 13 2026
JOAN KANE, CLERK
U.S. DIST. COURT WESTERN DIST. OKLA.
BY naa, DEPUTY

**DEWAYNE CLARK,**
**Plaintiff,**

**v.** ) **Case No: CIV-25-775-SLP**

**CORECIVIC, INC., et al.,**
**Defendants.**

## PLAINTIFF'S SUR-RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

* * * * * * *

**AND NOW COMES** the Plaintiff, Dewayne Clark ("Clark"), *pro se*[1], and, after seeking leave respectfully offers this Sur-Response to address the new evidence and arguments raised for the first time in CoreCivic's[2] Reply brief. See: *DE 26*.

For the Court's consideration Clark respectfully offers the following:

## I. INTRODUCTION

CoreCivic's Reply asks this Court to resolve this case on a paper record divorced from the reality of Clark's circumstances[3]. It assembles a handful of

[1] Because Clark is continuing to proceed in this matter without the benefit of counsel, it is respectfully requested that the Court continue to apply a liberal interpretation to the claims asserted herein. See e.g.: *Erickson v. Pardus, 551 U.S. 89, 94 (2007).*
[2] Unless otherwise noted the abbreviations used in Clark's previous filings are used herein.
[3] Clark acknowledges the Court's admonishment in its Order of December 22, 2025 (See: *DE 29*) regarding a prior mischaracterization of case law. All authorities cited herein have been reviewed to ensure their accuracy and proper application to the arguments presented. Clark apologizes to the Court for this error and ensures that he will use his best efforts to ensure that such an error does not happen again.

administrative documents and recasts them as proof of exhaustion, while ignoring the practical unavailability of any meaningful grievance process during the period when Clark was hospitalized, confined to the infirmary, and physically incapacitated. The PLRA does not require exhaustion of remedies that exist only in theory; it requires exhaustion only of those that are actually available in practice.

When the record is viewed as a whole, CoreCivic's own evidence undermines its position. At a minimum, it creates genuine disputes of material fact regarding whether Clark was physically capable of accessing CoreCivic's grievance system and whether that system was accessible to him at all during the critical period following the transport accident. Those disputes cannot be resolved on summary judgment.

Independently, the undisputed record establishes that Clark's transfer out of CoreCivic's custody rendered any remaining grievance process a dead end as a matter of law. And even if exhaustion were otherwise required, CoreCivic's attempt to impose an additional, duplicative grievance requirement on fully noticed Oklahoma tort claims finds no support in the PLRA or Oklahoma law. For each of these reasons, summary judgment must be denied[4].

---

[4] Clark respectfully objects to CoreCivic's decision to withhold Exhibits 26-1 through 26-3 until its Reply, thereby depriving him of any opportunity to address those materials in his original response. This Court has recognized that "a party waives issues and arguments raised for the first time in a reply brief." See: *Lemons v. Portfolio Recovery Assocs., LLC, No. CIV-23-600-SLP, 2024 WL 2871331, at *10 (W.D. Okla. July 29, 2024) (quoting M.D. Mark, Inc. v. Kerr-McGee Corp., 565 F.3d 753, 768 n.7 (10th Cir. 2009)).* Clark understands the Court has mitigated prejudice by permitting this Sur-Response, but he respectfully preserves his objection and submits that the Reply-only exhibits should be disregarded to the extent they expand CoreCivic's affirmative exhaustion defense.

## II. LEGAL ARGUMENT

### A. CoreCivic's Reply Evidence Fails to Establish Availability and, at Minimum, Creates a Genuine Dispute of Material Fact

Failure to exhaust administrative remedies under the PLRA is an affirmative defense, and CoreCivic bears the burden of proving that an administrative remedy was actually available to Clark in his particular circumstances. See: *Jones v. Bock*, *549 U.S. 199, 216 (2007).* The PLRA does not require exhaustion of remedies that exist only in theory; it requires exhaustion only of those that are "available" in practice. See: *Ross v. Blake*, *578 U.S. 632, 643–44 (2016).* The new evidence CoreCivic relies upon in its Reply does not satisfy that burden.

CoreCivic's primary contention is that Clark demonstrated the ability to access the grievance system because certain documents bearing his signature exist in the record. That contention rests on a mischaracterization of what the evidence actually shows. The document CoreCivic highlights is not a formal grievance but a sick-call request—an entirely different mechanism used to obtain routine medical attention rather than to lodge complaints regarding staff misconduct or institutional negligence. More importantly, the undisputed evidence shows that the body of this request was completed by another inmate because Clark was physically unable to write following shoulder surgery, multiple rib fractures, and a casted wrist. See: *Clark Supp. Decl.* ¶¶ *8–10, 18.* Rather than establishing availability, this document corroborates Clark's sworn testimony that he was physically incapacitated and dependent on others even to request basic medical care.

CoreCivic's reliance on Clark's signature on this and other forms does not alter the analysis. Clark has attested that signing documents caused significant pain and difficulty due to his injuries, and CoreCivic offers no medical or testimonial evidence to contradict that account. See: *Clark Supp. Decl.* ¶¶ *6, 18.* At most, the existence of a labored signature creates a factual dispute regarding Clark's physical capacity during this period. Such credibility disputes cannot be resolved on summary judgment. See *Perttu v. Richards, 605 U.S. ___, 144 S. Ct. ___ (2025).*

CoreCivic also relies on a "refusal of medical care" form, presenting it as evidence that Clark no longer required treatment or was capable of navigating institutional processes. The record supports no such inference. Clark has sworn that he signed the form under duress, facing the choice of remaining indefinitely at a facility providing inadequate medical care or signing the form to facilitate a transfer to a BOP facility where he believed he could finally receive appropriate treatment. See: *Clark Supp. Decl.* ¶¶ *2–3, 14–15.* Evidence that an inmate signed a form to escape ongoing medical neglect does not demonstrate meaningful access to a multi-step grievance system; it instead supports a finding that institutional practices effectively thwarted use of that system. See *Ross*, 578 U.S. at 643–44.

The new "evidence" further fails to establish that grievance procedures were accessible during the most critical period following the transport accident. CoreCivic's own housing records confirm that Clark was confined to the infirmary immediately upon his return from the hospital. See also: Clark Supp. Decl. ¶¶ 9–10. Yet CoreCivic presents no evidence that grievance forms, submission mechanisms,

or staff assistance were available to inmates housed in the infirmary—particularly to an inmate with one arm immobilized and the other in a cast. The burden to establish availability rests with CoreCivic, and its silence on this point is dispositive See: *Jones, 549 U.S. at 216.*

This evidentiary gap is compounded by the sworn admission of CoreCivic's Grievance Coordinator that she routinely advises staff not to accept completed grievance forms, a practice that directly contradicts CoreCivic's written policy. When staff practices render a grievance process opaque or incapable of use, the PLRA does not require exhaustion. See: *Ross, 578 U.S. at 643–44.* On this record, a reasonable jury could conclude that CoreCivic's grievance process was not meaningfully available to Clark during the period when exhaustion supposedly should have occurred. See e.g.: *Clark Supp. Decl.* ¶¶ *8–10, 18.*

### B. Clark's Transfer Independently Rendered the Grievance Process Unavailable on the Facts of This Case

The undisputed record establishes that Clark was transferred from CoreCivic's custody to the Bureau of Prisons on November 27, 2024. See *DE 19 at 5; DE 26, Ex. 1.* The PLRA requires exhaustion only of administrative remedies that are actually "available." See: *42 U.S.C. § 1997e(a).* Under Ross, a remedy is unavailable when it operates as a "dead end" or is incapable of use in practice. See: *Ross at 643–44.*

CoreCivic advances a hypothetical best-case timeline under which every grievance response is issued on the earliest possible date and every appeal is immediately processed, then "presumes" that Clark could have completed all steps before his transfer. That scenario is speculative and untethered to the record. It

assumes uninterrupted physical capacity, immediate access to grievance forms and submission channels, and perfect institutional compliance with internal deadlines—conditions that simply did not exist here. Rather the record shows that Clark was hospitalized, confined to the infirmary upon return, and physically incapacitated during the period when CoreCivic now suggests he should have been navigating a multi-step grievance and appeal process. By the time Clark could realistically have attempted to pursue a grievance, he had already been transferred to a different correctional system, with no practical ability to submit or pursue CCF-specific grievances, meet internal timelines, or participate in any required appeals or follow-up steps. On these facts, CoreCivic's grievance process became a "dead end" within the meaning of *Ross*.

Where, through no fault of the prisoner, the administrative process becomes effectively impossible to complete, exhaustion is not required. See, e.g., *Nunez v. Duncan*, *591 F.3d 1217, 1224 (9th Cir. 2010).* CoreCivic's hypothetical timeline cannot substitute for evidence of actual availability, and summary judgment cannot rest on assumptions divorced from the undisputed facts of hospitalization, infirmary confinement, and transfer.

**C. Alternatively, the PLRA's Exhaustion Requirement Should Not Be Applied Here to Supplant Oklahoma's Specific Tort-Claim Scheme**

Clark's claims are state-law negligence claims governed by the Oklahoma Governmental Tort Claims Act ("OGTCA"), which provides a comprehensive and mandatory pre-suit notice framework. See 51 O.S. §§ 151 et seq., 156–157. Clark complied with that statutory scheme. See DE 2, Ex. A. The OGTCA serves the same

core function as PLRA exhaustion: providing notice and an opportunity to address claims before litigation. CoreCivic nevertheless argues that, in addition to satisfying the OGTCA, Clark was required to complete every step of CoreCivic's internal grievance process under 57 O.S. § 566.5. In this context, that reading would impose a duplicative "double exhaustion" requirement—first through a state-mandated tort-claim regime and then through a private contractor's internal grievance system—without clear statutory direction. At a minimum, the PLRA should not be construed to supplant or duplicate Oklahoma's specific tort-claim framework where, as here, the plaintiff has already complied with the state's mandatory notice provisions.

Even if the PLRA applies in some measure, CoreCivic's grievance process, as applied to Clark's fully accrued and fully noticed negligence claims, functioned as a dead end rather than a meaningful remedial mechanism. Exhaustion is required only where the process is capable of providing some relief. Ross, 578 U.S. at 643–44. On this record—including the undisputed evidence of Clark's injuries, transfer, and the facility's grievance practices—CoreCivic's internal process was not capable of addressing or correcting the alleged misconduct. For that additional reason, summary judgment should be denied.

## III. CONCLUSION

**WHEREFORE**, Clark respectfully requests that this Honorable Court deny CoreCivic's Motion to Dismiss, which is properly treated as a Motion for Summary Judgment, and grant any further relief the Court deems just and proper.

*Respectfully Submitted,*

**Dewayne Clark**
Reg. No: 32563-044
USP McCreary – Satellite Camp
P.O. Box 3000
Pine Knot, KY 42635[5]

## CERTIFICATE OF SERVICE

I hereby certify that on this 8 day of January, 2026, I served a true and correct copy of the foregoing Sur-Response by U.S. Mail, postage prepaid, upon the following counsel of record:

Darrell L. Moore, Esq.
Court Place at North Vann
P.O. Box 368
Pryor, OK 74362
Attorney for Defendant CoreCivic

**ORIGINAL TO:**
Clerk of the United States District Court
For the Western District of Oklahoma
200 NW 4th Street
Oklahoma City, OK 73102

**WITNESS MY HAND THIS 8 DAY OF JANUARY 2026**

| | |
|---|---|
| ____________________ | ____________________ |
| Witness | Dewayne Clark |

[5] Clark respectfully apologizes to the Court for any page-limit issue associated with this supplemental filing. The filing exceeds the page limitation only if the signature page and Certificate of Service are included in the page count. Clark has made every effort to present the issues raised by Defendants' Reply as briefly and directly as possible while still fairly addressing the new evidence and arguments presented. To the extent the Court determines that the page limitation has been exceeded, Clark respectfully requests leave to exceed the applicable page limit for this filing.